FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2006 JAN 25  PM 12: 58

LORETTA G. WHYTE
CLERK

## UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF LOUISIANA

TAURUS GREGORY                                    CIVIL ACTION

VERSUS                                            NO. 05-1857

LT. RONNIE SEAL  ET AL.                           SECTION "C" (2)


### **REPORT AND RECOMMENDATION**

Plaintiff, Taurus Gregory, is a convicted distributor of crack cocaine currently incarcerated in the Washington Correctional Institute ("WCI") in Angie, Louisiana. He filed this complaint pro se and in forma pauperis pursuant to 42 U.S.C. § 1983 against Lt. Ronnie Seal, Sgt. Charlie Morris, Emergency Medical Technician Bruce Stewart, Sgt. Samuel Tynes and Elizabeth Oliviera. He alleges that while incarcerated in WCI on January 13, 2005, he was forced to remain handcuffed for about eight hours, subjected to excessive force when he was struck by Lt. Seal, provided with inadequate medical care and punished based on false disciplinary charges. He seeks monetary damages and equitable relief. Record Doc. No. 1 (Complaint at ¶ V).

Fee_____
Process_____
X Dktd_____
CtRmDep_____
Doc. No _____

On July 7, 2005, I conducted a telephone conference in this matter.  Participating were plaintiff pro se and Jennifer Medley, counsel for defendants.  Plaintiff was sworn and testified for all purposes permitted by Spears v. McCotter, 766 F.2d 179 (5th Cir. 1985), and its progeny.

### THE RECORD

Plaintiff testified that he is currently incarcerated in WCI based on a conviction for distribution of crack cocaine in August 1999, for which he is serving a sentence of seven years in prison. Gregory testified that he has several lawsuits pending in this court at this time, but this one is based on an incident that occurred in WCI on January 13, 2005. He confirmed that he makes four kinds of claims in this case, including (1) it was cruel and unusual punishment that he was kept in handcuffs for about eight hours. (2) he was subjected to excessive force when defendant Lt. Ronnie Seal punched him in the eye while he was handcuffed; (3) he received inadequate medical care for the injuries he suffered in the incident, including the "failure to document negligence of the emergency medical technician;" and (4) the disciplinary infraction conviction he received as a result of the incident was improper.

As to his first claim, Gregory testified that on January 13, 2005, he was located on Sleet 3 "extended lockdown" tier at WCI, which has no clock. He said that he was handcuffed for a "lab callout," which meant he was being taken from his cell to a medical

2

unit in the prison to have blood lab work done.  Plaintiff testified that he was handcuffed by Sgt. Charlie Morris at about 6:10 a.m.  He stated that as he passed defendant Seal on his way to the medical unit, Seal told him to "get your witnesses together, because you're going to need them."  He identified Seal as a WCI official whom Gregory had previously sued in several other cases in this court.  Gregory testified that Seal also told the security officer who was escorting him to the lab, "you gotta watch him, because he tried to do this and do that."

Gregory stated that he went to the lab and came back to his cell at around 6:18 a.m., but he was left in the handcuffs.  He said his ankle shackles were removed by Sgt. Samuel Tynes before he entered his cell, but Morris and Seal refused to take off the handcuffs.  He said, "I screamed to get the handcuffs off.  They refused to get them off. I screamed repeatedly."

Plaintiff testified that it had been Morris and Tynes who put the shackles and handcuffs on him, but upon his return to his cell it was Tynes who removed the ankle shackles.  Gregory testified that "Sgt. Charlie Morris looked at me with a hate look, like he had something against me, and walked off the tier, so I continued to scream and scream and scream to get the handcuffs removed, which was not locked, which should have been locked."  He said that after about two hours he laid down with his hands

3

cuffed behind his back, "trying to lay on my side," and as he tried to sleep the cuffs got tighter and tighter, cutting off his circulation and resulting in abrasions on his wrists.

Gregory stated that he got up after 15 or 20 minutes of trying to sleep with the handcuffs behind his back "and started screaming again, waking up the other inmates on the tier." He said that at about 1 p.m., Elizabeth Oliviera came on the tier to make her usual rounds. He stated that the handcuffs were removed at about 2:15 p.m., after E.M.T. Bruce Stewart had done a medical examination of plaintiff. Gregory alleged that Stewart failed to document all his claims, but stated that before Stewart arrived he was punched in the eye by Seal while still handcuffed.

Plaintiff testified that Sgt. Morris removed the handcuffs at about 2:15 p.m. Gregory stated that the "only confusion (sic)" he made during the incident was his screaming in an attempt to get the officers to take off the handcuffs.

Asked what injuries he suffered as a result of being handcuffed for eight hours, plaintiff testified that he had abrasions on both wrists and that big black bruises remain on his wrists and on his right cheek under his eye. Gregory described the abrasions as "big bleeding circles" caused by the tightening of the handcuffs as he moved around in them. He said he also has numbness in his left hand as a result of the incident and that an exercise machine he has been provided has done nothing to improve this condition.

As to his excessive force claim, Gregory testified that Seal punched him in the eye while he was handcuffed. He said that before getting the handcuffs removed or being examined by Stewart, he was taken out of his cell. He stated that by this time he was very nervous and scared, so he paid no attention to any clock. Plaintiff alleged that Seal was wearing black leather gloves, swung at him one time, struck him in the right eye and left a circular scrape on his right cheek. He stated that the nurse documented the injury as an abrasion on his right cheek. Plaintiff said that when he was punched he instantly felt his face "slightly swell up," and Seal tried to trip him, missed, and then let Morris escort Gregory back to his cell. He testified that E.M.T. Stewart then arrived on his routine medications round. Gregory stated that both Morris and Tynes were present when Seal hit him, but no one else struck him. He stated that no inmates saw the blow, but other inmates saw the officers take him off the tier to the area where he was struck.

Gregory testified that he is <u>not</u> suffering from continuing problems as a result of being punched in the eye, but he is continuing to suffer with numbness in his hands from the eight-hour handcuffing. He said his cheek was bleeding from the abrasion and a round mark remains visible, but no stitches were required and no bones were broken.

As to his third claim, plaintiff testified that Stewart both failed to fully document the injuries he suffered in the incident and that he received inadequate medical care for the injuries. He stated that at about 2:10 p.m. on the day of the incident, Stewart was

5

making his routine afternoon medications rounds when Gregory made an "SDE," meaning "self-declared emergency." He stated that Stewart completed his medications distribution, then stopped in front of Gregory's cell with a "sick call sheet," but he documented only the abrasions on Gregory's wrists. Gregory denied that his cell had been "shaken down" on that date, but Stewart nevertheless noted a shakedown at Seal's request. Asked to specify his complaint against Stewart, Gregory said "negligence, his failure to document the proper examinations," specifically to document the abrasion on his eye instead of just the abrasion on his wrist and painful ribs.

Gregory stated that he had reviewed the medical records which I previously ordered, Record Doc. Nos. 6 and 11, and confirmed that they are accurate. He pointed out that a second report prepared by a nurse after the report done by Stewart correctly noted all of his injuries, while Stewart's report had mentioned only abrasions on his wrists. In short, Gregory alleged that his complaint against Stewart is that he was negligent in not preparing a proper report.

Asked about his complaints concerning his medical care, he said that Dr. Thomas at WCI has been seeing him, but keeps telling him that the feeling will come back in his hand. Gregory testified that the doctor has given him an exercise machine for the numbness in his hands, but the machine is not providing relief. He complained that he has been working with the machine provided by the doctor for months, but he continues

to experience numbness. He alleged that Dr. Thomas is not providing the proper medical treatment and he wants to see another doctor about the nerves in his hands.

The medical records, Record Doc. No. 11, confirm Gregory's testimony that he was seen by both EMT Stewart and Nurse Turnage shortly after the handcuffing incident. A response to his request for treatment dated January 26, 2005, indicates that he "keeps pulling the scabs off sores on his wrist keeping them from healing." The records also note that he was seen by Dr. Thomas at WCI on February 7, 2005, who ordered physical therapy in the form of "hand exercises." The records also contain a "WCI treatment order" and "sick call sheet," both dated February 21, 2005, confirming Dr. Thomas's direction that Gregory use a "Posey hand exerciser" three times per day for 20 minutes until April 12, 2005. The records show that Dr. Thomas examined plaintiff again on April 20, 2005, during which no objective findings were made and another appointment was scheduled for February 16, 2006.

As to his final claim concerning the disciplinary convictions, Gregory testified that he was charged on January 13, 2005 with aggravated disobedience because he failed to give up the handcuffs. He said he was convicted on this charge about a month later and he received punishment consisting of four weeks of "cell confinement" after ten days of "isolation," during which he has to give up his mattress at 4:30 or 5 a.m. and it is given back to him later at about 8:30 p.m. He said that during cell confinement he is prohibited

from going to the canteen, using the telephone, or going outside in the yard, and is kept in his cell at all times, except to shower for 10 minutes. He said he has a toilet in his cell. He said that his cell confinement punishment started only after his isolation period was completed, and that he was already on isolation for another offense before this punishment was imposed.

Gregory confirmed that he was given a hearing on this offense before a disciplinary board consisting of two people. He alleged, however, that the inmate is always found guilty before WCI disciplinary boards. He stated that he was not permitted to call any witness, but he did make a statement to the board. He acknowledged that he had received a "writeup," or written statement of the charge against him, prepared by Sgt. Morris before the hearing. He alleged that Sgt. Morris lied in the writeup when he asserted that he had shaken down Gregory's cell that day. He testified that his complaint about these disciplinary charges is that they were false, but he was convicted any way.

At the conclusion of plaintiff's testimony, defense counsel suggested that the same issues being addressed in the instant lawsuit had already been the subject of an evidentiary hearing before Magistrate Judge Chasez in this court on plaintiff's request for a restraining order filed in one of Gregory's other lawsuits. Gregory disagreed.

On June 23, 2005, prior to the Spears hearing, defendants filed a motion to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(6). Record Doc. No. 9. In their motion,

8

defendants argued that the complaint fails to allege any violation of plaintiff's constitutional rights as a result of the personal involvement of any defendant and that defendants are entitled to dismissal of this action under the doctrine of qualified immunity. Plaintiff filed a responsive memorandum, Record Doc. No. 13, which I have considered in conjunction with his testimony in opposition to the motion.

**ANALYSIS**

I.   **STANDARDS OF REVIEW**

"A federal court may dismiss a claim in forma pauperis 'if satisfied that the action is frivolous or malicious.'" Moore v. McDonald, 30 F.3d 616, 620 (5th Cir. 1994) (quoting former 28 U.S.C. § 1915(d), now incorporated in 28 U.S.C. § 1915(e), as amended). A complaint is frivolous "if it lacks an arguable basis in law or fact." Davis v. Scott, 157 F.3d 1003, 1005 (5th Cir. 1998); Reeves v. Collins, 27 F.3d 174, 176 (5th Cir. 1994). The law "'accords judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless.'" Macias v. Raul A. (Unknown), Badge No. 153, 23 F.3d 94, 97 (5th Cir. 1994) (quoting Neitzke v. Williams, 490 U.S. 319, 327 (1989)).

The purpose of a Spears hearing is to dig beneath the conclusional allegations of a pro se complaint, to ascertain exactly what the prisoner alleges occurred and the legal

basis of the claims.  Spears, 766 F.2d at 180.  "[T]he Spears procedure affords the plaintiff an opportunity to verbalize his complaints, in a manner of communication more comfortable to many prisoners."  Davis, 157 F.3d at 1005. The information elicited at such an evidentiary hearing is in the nature of an amended complaint or a more definite statement under Fed. R. Civ. P. 12(e).  Wilson v. Barrientos, 926 F.2d 480, 481 (5th Cir. 1991); Adams v. Hansen, 906 F.2d 192, 194 (5th Cir. 1990). "Upon development of the actual nature of the complaint, it may also appear that no justiciable basis for a federal claim exists."  Spears, 766 F.2d at 182.

The court may make only limited credibility determinations in a Spears hearing, Norton v. Dimazana, 122 F.3d 286, 292 (5th Cir. 1997) (citing Cay v. Estelle, 789 F.2d 318, 326-27 (5th Cir. 1986), overruled on other grounds by Denton v. Hernandez, 504 U.S. 25, 112 S.Ct. 1728 (1992)), and may consider and rely upon documents as additional evidence, as long as they are properly identified, authentic and reliable. "The Court should allow proper cross-examination and should require that the parties properly identify and authenticate documents.  A defendant may not use medical records to refute a plaintiff's testimony at a Spears hearing."  Id. (citing Wilson, 926 F.2d at 482-83; Williams v. Luna, 909 F.2d 121, 124 (5th Cir. 1990)).

After a Spears hearing, the complaint may be dismissed as legally frivolous if it lacks an arguable basis in law, Jackson v. Vannoy, 49 F.3d 175, 176-77 (5th Cir. 1995);

10

Moore v. Mabus, 976 F.2d 268, 269 (5th Cir. 1992), or "as factually frivolous only if the facts alleged are 'clearly baseless,' . . . [or] when the facts alleged rise to the level of the irrational or wholly incredible." Id. at 270.

"'A complaint lacks an arguable basis in law if it is based on an indisputably meritless legal theory, such as if the complaint alleges the violation of a legal interest which clearly does not exist.'" Davis, 157 F.3d at 1005 (quoting McCormick v. Stalder, 105 F.3d 1059, 1061 (5th Cir. 1997)). "When a complaint raises an arguable question of law which the district court ultimately finds is correctly resolved against the plaintiff, dismissal under Rule 12(b)(6) is appropriate; however, dismissal under the section 1915(d) standard is not." Moore, 976 F.2d at 269.

In addition, a prisoner's in forma pauperis complaint must be dismissed if it is found to be malicious. 28 U.S.C. § 1915(e)(2)(B)(i). Duplicative and repetitive lawsuits are malicious for purposes of Section 1915. Pittman v. Moore, 980 F.2d 994, 994-95 (5th Cir. 1993); Barley v. Johnson, 846 F.2d 1019, 1021 (5th Cir. 1988.) A prisoner's in forma pauperis complaint which is frivolous, malicious or fails to state a claim may be dismissed sua sponte at any time under 28 U.S.C. § 1915(e)(2) and 42 U.S.C. § 1997e(c)(1).

In this case, plaintiff's complaint may be dismissed under 28 U.S.C. § 1915(e) and 42 U.S.C. § 1997e(c)(1), because it is in part malicious and repetitive of the same claims

11

asserted and tried in an earlier filed suit in this court and because the remainder of the complaint lacks an arguable basis in law or under Rule 12(b)(6) in light of his testimony explaining the factual basis of his claims and fails to state a claim under the broadest reading,[1] even as amended by his testimony at the <u>Spears</u> hearing.

## II.   DUPLICATIVE/MALICIOUS CLAIMS

Gregory's first two claims in this case – <u>i.e.</u>, that he was unconstitutionally subjected to cruel and unusual punishment when he was handcuffed for eight hours and that he was subjected to excessive force when Lt. Seal struck him – must be dismissed because they are duplicative of the same claims he has asserted in an earlier filed case, which is still pending in this court and as to which a full evidentiary hearing has already been conducted. A review of this court's records establishes that plaintiff's first two claims asserted in this lawsuit are therefore malicious as a matter of law and must be dismissed for that reason.

Gregory filed the captioned lawsuit in this court on May 19, 2005, and it was referred to me. On that date, he already had pending in this court Civil Action No. 04-3017 "F" (5), which had been referred to Magistrate Judge Chasez upon its filing more than six months earlier on November 5, 2004.

---

[1] Pro se civil rights complaints must be broadly construed, <u>Moore</u>, 30 F.3d at 620, and I have broadly construed the complaint in this case.

In Gregory's earlier filed complaint, he alleged that Lt. Ronnie Seal, one of the defendants in the captioned lawsuit and the person who allegedly subjected him to excessive force, had made several false statements about him to other inmates "and therefore my life is in jeopardy." C.A. No. 04-3017, Record Doc. No. 1 (Complaint at ¶ IV). On January 19, 2005, in that earlier filed case, Gregory filed a "Motion for Temporary Restraining Order, Order to Show Cause, Preliminary Injunction and Expedited Hearing," Record Doc. No. 13. In that motion, he made the same allegations concerning the January 13, 2005 eight-hour handcuffing and striking by Lt. Seal that are now included in his complaint pending before me.

I have reviewed the record of the earlier filed case pending before Magistrate Judge Chasez. That record establishes that on March 16, 2005, two months before the captioned suit was filed and referred to me, Magistrate Judge Chasez conducted a full evidentiary hearing concerning the January 13, 2005 handcuffing and striking incident. During that hearing, the magistrate judge received the sworn testimony of five witnesses for plaintiff and two witnesses for defendant, all concerning the January 13th incident, and ordered the submission of various documents for her consideration in deciding plaintiff's request for injunctive relief. After the evidentiary hearing before Magistrate Judge Chasez, Gregory made several written submissions in which he made additional arguments and factual assertions concerning the January 13, 2005 incident. See, e.g.,

13

C.A. No. 04-3017 Record Doc. No. 28.  As of the date of issuance of this report and

recommendation, the matter remains under advisement before Magistrate Judge Chasez,

and no findings, recommendations or additional orders have been rendered.

It was only after the evidentiary hearing before Magistrate Judge Chasez when

Gregory, apparently dissatisfied with the pace of or his prospects in the proceedings in

his earlier filed case, filed the instant complaint. It is clear from both his written

submissions and his <u>Spears</u> testimony in the case before me that Gregory's earlier filed

case, Civil Action No. 04-3017"F"(5), now contains the same claims concerning his

eight-hour handcuffing and Seal's alleged punch, and that those claims have already been

the subject of a full evidentiary hearing.  Gregory now seeks to prosecute those same

claims again in the captioned complaint.

Plaintiff has filed the instant action as a pauper under 28 U.S.C. § 1915.  As noted

above, an in forma pauperis complaint shall be dismissed if it is found to be malicious.

28 U.S.C. § 1915(e)(2)(B)(i).  Duplicative and repetitive lawsuits are malicious for

purposes of Section 1915.  <u>Pittman</u>, 980 F.2d at 994-95; <u>Bailey</u>, 846 F.2d at 1021.

> Courts may appropriately dismiss an in forma pauperis action as
> frivolous, when the action "seek[s] to relitigate claims which allege
> substantially the same facts arising from a common series of events which
> have already been unsuccessfully litigated by the in forma pauperis
> plaintiff." . . . In <u>Pittman</u>, the Fifth Circuit Court of Appeals noted that
> <u>Wilson [v. Lynaugh]</u> "essentially held that pauper status does not entitle a
> plaintiff to avoid the ordinary rules of res judicata."  The Circuit then

agreed that a complaint is malicious when it "duplicates allegations of another pending federal lawsuit by the same plaintiff." Reading <u>Pittman</u> and <u>Wilson</u> in conjunction, it is clear that the Court may dismiss an action as malicious when the complaint raises claims that would be barred by the principles of res judicata, whether or not the prior litigation has ended unsuccessfully for the plaintiff.

It is well-settled that "res judicata bars all claims that were brought or could have been brought based on the operative factual nucleus." A complaint is thus malicious when it "duplicates allegations of another pending federal lawsuit by the same plaintiff" or when it raises claims arising out of a common nucleus of operative facts that could have been brought in the prior litigation.

*　*　*　*　*

The Court may either consolidate the two actions or dismiss the instant action without prejudice to plaintiff pursuing his other case, "including any assertions therein of any of the claims in the instant suit." "Ordinarily," however, the courts dismiss "the later-filed action . . . in favor of the case that was filed earlier."

<u>McGill v. Juanita Kraft Postal Serv.</u>, No. 3:03-CV-1113-K, 2003 WL 21355439, at *1-2 (N.D. Tex. June 6, 2003) (Ramirez, M.J.) (quoting <u>Wilson v. Lynaugh</u>, 878 F.2d 846, 850 (5th Cir. 1989); <u>Pittman</u>, 980 F.2d at 994, 994-95; <u>Ellis v. American Express Life Ins. Co.</u>, 211 F.3d 935, 938 n.1 (5th Cir. 2000)), <u>report & recommendation adopted</u>, 2003 WL 21467745 (N.D. Tex. June 18, 2003) (Kinkeade, J.); <u>accord</u> <u>Parker v. Fort Worth Police Dep't</u>, 980 F.2d 1023, 1026 (5th Cir. 1993).

Magistrate Judge Chasez's findings in Gregory's earlier filed case in this court concerning the handcuffing and alleged striking by Lt. Seal will be conclusive as to those claims. If she finds no violation of plaintiff's constitutional rights, no cognizable Section

15

1983 claim will exist.  If she finds some violation of constitutional rights sufficient to support the equitable relief Gregory seeks by motion before her, he may amend his complaint in that case also to seek damages.  However, Gregory's attempt to reassert in this case the same claims concerning his eight-hour handcuffing and his alleged striking at the hands of Lt. Seal that have already been asserted <u>and</u> <u>tried</u> in his earlier filed case in this court must be rejected in this case as duplicative and malicious.  Because no findings or other order concerning the evidence submitted in connection with those claims in the earlier filed case have yet been rendered, dismissal of those claims in the captioned case should be <u>without</u> prejudice.

The record of the case before Magistrate Judge Chasez indicates that certain allegations, arguments and evidence concerning the other two claims asserted by Gregory in the captioned case – <u>i.e.,</u> that he received inadequate medical care and that he has been punished in jail based on false disciplinary charges – have also been presented to some extent in the case before Magistrate Judge Chasez.  However, because these latter two claims are so patently frivolous on their face as a matter of law, for the reasons set out below, I recommend that they be treated differently in that they should be dismissed with prejudice now, since there is no need to await Magistrate Judge Chasez's factual findings as to these claims.

16

III.   <u>MEDICAL CARE</u>

Gregory's claim concerning the medical care he received after the January 13th incident is both that his care for injuries suffered in the incident has been inadequate and that EMT Stewart was negligent in the preparation of his report.

Gregory was a convicted prisoner at all relevant times about which he complains. In <u>Estelle v. Gamble</u>, 429 U.S. 97, 104 (1976), the Supreme Court held that a convicted prisoner may succeed on a claim for damages under 42 U.S.C. § 1983 for inadequate medical care only if he demonstrates that there has been "deliberate indifference to serious medical needs" by prison officials or other state actors.   Only deliberate indifference, "an unnecessary and wanton infliction of pain . . . or acts repugnant to the conscience of mankind," constitutes conduct proscribed by the Eighth Amendment.  <u>Id</u>. at 105-06; <u>accord</u> <u>Gregg v. Georgia</u>, 428 U.S. 153, 182-83 (1976).  "Deliberate indifference" means that a prison official is liable "only if he knows that the inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it."  <u>Farmer v. Brennan</u>, 114 S. Ct. 1970, 1984 (1994).  The <u>Farmer</u> definition applies to Eighth Amendment medical claims.  <u>Reeves</u>, 27 F.3d at 176. The Fifth Circuit has reiterated in <u>Hare v. City of Corinth</u>, 74 F.3d 633 (5th Cir. 1996), that the deliberate indifference standard applies to convicted prisoners like Gregory.

An inmate must satisfy two requirements to demonstrate that a prison official has violated the Eighth Amendment. "First, the deprivation alleged must be, objectively, 'sufficiently serious'; a prison official's act or omission must result in the denial of the minimal civilized measure of life's necessities." Farmer, 511 U.S. at 834 (quotation omitted). Thus, plaintiff must show deliberate indifference to his "serious medical needs" to satisfy this prong. Wilson v. Seiter, 501 U.S. 294, 297 (1991); Mendoza v. Lynaugh, 989 F.2d 191, 193 (5th Cir. 1993).

Further, the plaintiff must establish that the defendant possessed a culpable state of mind. Farmer, 114 S. Ct. at 1979 (citing Wilson, 501 U.S. at 298). A prison official cannot be held liable "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. at 1979.

"The Supreme Court has reaffirmed that 'deliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action. Board of the County Commissioners of Bryan County, Oklahoma v. Brown, 520 U.S. 397, 117 S.Ct. 1382, 1391 (1997) . . . . The 'deliberate indifference' standard permits courts to separate omissions that 'amount to an intentional choice' from those that are merely 'unintentionally negligent oversight[s].'" Southard v.

18

Texas Bd. of Crim. Justice, 114 F.3d 539, 551 (5th Cir. 1997) (citations omitted) (emphasis added).   "'Subjective recklessness,' as used in the criminal law, is the appropriate test for deliberate indifference."   Norton, 122 F.3d at 291.

In this case, plaintiff's allegations negate any inference that defendants acted with deliberate indifference to plaintiff's serious medical needs.   Initially, it cannot be concluded that the conditions he described presented a serious medical need that posed a substantial risk of harm during his incarceration at WCI.   He testified that he suffered bruises, abrasions and continuing numbness in his hands.   He stated that he is experiencing no continuing problems resulting from the punch in the eye.   He suffered no broken bones or lacerations requiring stitches.   These complaints do not rise to the level of a serious medical need for purposes of constitutional analysis.   See Martin v. Tyson, 845 F.2d 1451, 1457-58 (7th Cir. 1988) (delay in treating tooth ache and ear infection not sufficiently serious);   Griffin v. DeRobertis, 557 F.Supp. 302, 306 (N.D. Ill. 1983) (aches and sore throat not serious);   Banks v. Mannoia, 890 F.Supp. 95, 99 (N.D.N.Y. 1995) ("'bowel problems'" and headaches not considered a serious medical problem); cf. Baker v. Brantley County, 832 F. Supp. 346, 352 (S.D. Ga. 1993), aff'd, 19 F.3d 37 (11th Cir. 1994) (pneumonia is a serious medical need, but no deliberate indifference existed when plaintiff was examined by physician and received prescription medication).

19

Even assuming, however, that plaintiff's medical problems resulting from the handcuffing and alleged punch in the eye were serious, Gregory has alleged facts, confirmed by his testimony and the medical records, that negate any conceivable inference of deliberate indifference by jail officials. Plaintiff's complaint, as amended by his testimony and confirmed by the medical records, shows that he received constitutionally adequate medical attention for the conditions about which he complains while incarcerated in WCI. Plaintiff was examined by an emergency medical technician, a nurse and a doctor. He has been prescribed physical therapy for the alleged numbness in his hand and provided with a physical therapy device to accomplish it.

Under these circumstances, it cannot be inferred that jail personnel were deliberately indifferent to his condition. While it is clear from plaintiff's allegations and testimony that he is not satisfied with the effectiveness of his medical care, it is equally clear that the medical care provided has been constitutionally adequate. Certainly, no finding of deliberate indifference to his medical needs can be made based on this record, which includes attention by medical personnel and the provision of physical therapy for his complaints. In addition, his specific complaint against Stewart is that the EMT was negligent in the way he documented Gregory's injuries in a report.

Contentions like Gregory's that amount to a mere disagreement with the quality or extent of medical treatment or even negligence do not give rise to a Section 1983

20

claim. "[A]lthough inadequate medical treatment may, at a certain point, rise to the level of a constitutional violation, malpractice or negligent care does not." Stewart v. Murphy, 174 F.3d 530, 534 (5th Cir. 1999) (citing Mendoza, 989 F.2d at 193) (active treatment of prisoner's serious medical condition that ultimately resulted in death does not constitute the requisite deliberate indifference, even if the treatment was negligently administered); see Norton, 122 F.3d at 291-92; Varnado v. Lynaugh, 920 F.2d 320, 321 (5th Cir. 1991); Mendoza, 989 F.2d at 193 (prisoner's disagreement with the type or timing of medical services provided cannot support a Section 1983 claim); Wesson, 910 F.2d at 284 (allegations establishing provision of medical treatment are inconsistent with inference of deliberate indifference).

For all of the foregoing reasons, plaintiff's complaints in this case about his medical care advance a legally frivolous argument and fail to state a claim of violation of his constitutional rights sufficient to obtain relief under Section 1983.

IV.   FALSE DISCIPLINARY CHARGES

In Sandin v. Connor, 515 U.S. 472, 481-83 (1995), the Supreme Court held that analysis of a convicted prisoner's due process claim relating to prison disciplinary action begins with determining whether a constitutionally protected liberty interest exists. "Liberty interests protected by the Fourteenth Amendment may arise from two sources-- the Due Process Clause itself and the laws of the States." Hewitt v. Helms, 459 U.S. 460,

466 (1983).  In <u>Sandin</u>, the Supreme Court recognized that although the States may create liberty interests, "these interests will generally be limited to freedom from restraint which . . . imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."  <u>Sandin</u>, 515 U.S. at 484 (citations omitted).  Thus, in <u>Sandin</u>, when a prisoner was placed in disciplinary segregation for 30 days and the discipline did not inevitably affect the duration of his sentence, the Supreme Court held that due process does <u>not</u> require that a prisoner be afforded the procedural mechanisms previously prescribed in <u>Wolff v. McDonnell</u>, 418 U.S. 539 (1974), and <u>Hewitt</u>, 459 U.S. at 460.

"[T]he Due Process Clause does not protect every change in conditions of confinement which has a substantial adverse effect upon a prisoner."  <u>Madison v. Parker</u>, 104 F.3d 765, 767 (5th Cir. 1997).  The <u>Madison</u> court held that a prisoner's 30-day commissary and cell restrictions imposed as punishment for disciplinary violations were "merely changes in the conditions of his confinement and do not implicate due process concerns."  <u>Id.</u> at 768.  The court further held that such restrictions are "penalties, which do not represent the type of atypical, significant deprivation in which a state might create a liberty interest."  <u>Id.</u>  Examples of disciplinary hardships that would qualify as so atypical and significant as to implicate due process considerations include unwanted administration of antipsychotic drugs, involuntary commitment to a mental hospital or

22

extension of the prisoner's sentence for his underlying criminal conviction. <u>Sandin</u>, 515 U.S. at 493.

In <u>Wolff</u>, the Supreme Court held that because disciplinary proceedings are not part of a criminal prosecution, the prisoner is not afforded "the full panoply of rights" provided in criminal proceedings. <u>Wolff</u>, 418 U.S. at 556. Nevertheless, the <u>Wolff</u> court held that prison officials must afford the prisoner <u>some</u> due process in disciplinary proceedings before imposing punishment, including notice of the violation, a hearing and some opportunity to present evidence on the prisoner's behalf. <u>Id.</u>

In the instant case, Gregory's testimony and his written submissions establish that he can state no cognizable claim under Section 1983 related to his disciplinary infraction conviction. First, he testified that he received punishments for his disciplinary violation, including "cell confinement" and "isolation." This punishment meant that he had to give up his mattress for part of the day and he could not go to the prison canteen, use the telephone, participate in outdoor recreation or leave his cell except to shower. As to these types of punishment, Gregory was entitled to <u>no</u> particular process under <u>Sandin</u>. None of these punishments constitute such an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life" that particular forms of process were required. <u>Sandin</u>, 515 U.S. at 484.

To the extent Gregory claims that prison officials asserted false disciplinary charges against him, the case law is clear that an allegation that false disciplinary charges were asserted against an inmate by a prison official fails to state a claim under Section 1983 when the prisoner is afforded due process protection through a subsequent hearing. Collins v. King, 743 F.2d 248, 253-54 (5th Cir. 1984); Hanrahan v. Lane, 747 F.2d 1137, 1141 (7th Cir. 1984); Freeman v. Rideout, 808 F.2d 949, 952-53 (2d Cir. 1986). In this case, Gregory does not dispute that he had a disciplinary hearing, and his testimony establishes that the hearings were adequate under Wolff. He received written notice of the charges and a hearing, where he was permitted to make a statement on his own behalf. Thus, Gregory fails to state a claim that his due process rights were violated in his disciplinary proceedings.

## **RECOMMENDATION**

For all of the foregoing reasons, it is **RECOMMENDED** that plaintiff's complaint be **DISMISSED** in part as malicious and in part as legally frivolous and/or for failure to state a claim under 28 U.S.C. § 1915(e)(2) and 42 U.S.C. § 1997e(c)(1), without prejudice as to his duplicative handcuffing and excessive force claims and with prejudice in all other respects.

A party's failure to file written objections to the proposed findings, conclusions, and recommendations in a magistrate judge's report and recommendation within ten (10)

days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  Douglass v. United Servs. Auto Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).


New Orleans, Louisiana, this _24th_ day of January, 2006.



                              _____
                              JOSEPH C. WILKINSON, JR.
                              UNITED STATES MAGISTRATE JUDGE